UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

H & R BLOCK FINANCIAL ADVISORS, INC.,

    Plaintiff, Counter-Defendant,

v.

EXPRESS SCRIPTS, INC.,

    Defendant, and

AMERICAN STOCK TRANSFER & TRUST COMPANY,

    Defendant/Counter-Plaintiff;

and

AMERICAN STOCK TRANSFER & TRUST COMPANY,

    Third-Party Plaintiff,

v.

CATHERINE B. SCHWARTZE,

    Third-Party Defendant.
_____/

Case No.  05-73306

Honorable Nancy G. Edmunds

**ORDER DENYING H & R BLOCK'S MOTION FOR SUMMARY JUDGMENT [62] AND DENYING AST'S MOTION TO STRIKE [64]**

This dispute arises out of the mistaken issuance of 150,000 shares of stock in Defendant Express Scripts, Inc., to Third-Party Defendant Catherine B. Schwartze. Plaintiff/Counter Defendant H & R Block Financial Advisors ("HRBFA") has filed a Motion for Summary Judgment, seeking a ruling that Defendant/Counter-Plaintiff American Stock

Transfer & Trust Company ("AST) is not entitled to bond that it has previously posted with HRBFA. For the reasons discussed below, the Court DENIES HRBFA's Motion.

**I.   Background**[1]

For a short period in 1992 and 1993, Catherine Schwartze owned 100 shares of stock in Express Scripts, one of the nation's leading pharmacy benefit management companies. As Express Scripts's registered transfer agent, AST retained Schwartze's personal information on its database even after she no longer owned the stock.

In November 2003, Express Scripts directed AST to buy 150,000 shares of Express Scripts stock and to deposit it into Express Scripts's treasury account. AST collected the stock, but instead of depositing it into Express Scripts's account, a data processing error prompted AST mistakenly to deposit the 150,000 shares into Schwartze's account. AST credited the shares only as a "book entry," and therefore issued no physical stock certificate to Schwartze. The error went undetected for almost two years.

Then, on June 29, 2005, Schwartze received a letter from George Paz, President and CEO of Express Scripts, informing Schwartze of the decision to declare a two-for-one split of Express Scripts stock, entitling shareholders to stock dividends in an amount equal to their previous stake in the company. Enclosed with the letter was a stock certificate issued by Express Scripts and AST representing 150,000 shares of Express Scripts stock. Schwartze immediately took the certificate to her stockbroker, HRBFA.

On June 29, the following telephone call took place between HRBFA ("Earl") and AST ("Diane"):

---

[1] Much of this background discussion is drawn directly from this Court's April 6, 2006 Order.

> Diane: Thank you for calling shareholder services my name is Diane Fisher. How may I help you today?
>
> Earl: Oh hi Diane my name is Earl Angmisner of Block Financial Advisors and I have a certificate of Express Scripts that I was try . . . I was wanting to check for stops or restrictions.
>
> Diane: Do you know if its Class A or B?
>
> Earl: It is let's see its just . . . they just has it as common actually here. I can give you the cusip if that helps ya.
>
> Diane: Ok certificate number.
>
> Earl: A as in apple 8974 150,000 for Katherine Schwartze
>
> Diane: It's a good certificate.
>
> Earl: No stops or restrictions?
>
> Diane: No.
>
> Earl: Ok thank you very much.
>
> Diane: You're welcome.
>
> Earl: Bye bye.
>
> Diane: Bye bye.

(Doc. 33 at 5; Doc. 70 Ex. 3.)

On July 1, HRBFA began the process of selling Schwartze's shares. As Express Scripts's transfer agent, AST accepted and cancelled the stock certificate and reissued the 150,000 shares so that they could be traded on the market. When the sale was complete, HRBFA used the $7,391,158.88 generated to purchase municipal bonds, which it deposited into Schwartze's investment account.

In August of 2005, AST discovered its error. On August 23, AST notified HRBFA of the problem. At AST's request, HRBFA put a hold on Schwartze's investment account and

requested that Salomon Smith Barney do the same. On August 24, HRBFA explained the problem to Schwartze, liquidated the investment account, and began repurchasing 150,000 shares of Express Scripts stock. HRBFA explains that its "actions in purchasing the shares were done to protect its customer from further potential loss due to market appreciation, and these actions were undertaken after discussion of the issues with Schwartze and after AST had requested the return of the stock." (Doc. 55 at 5.)

On August 26, 2005, HRBFA filed this lawsuit against AST and Express Scripts, alleging negligence, estoppel, and fraud. Each of these counts focuses on AST's conduct; HRBFA seeks to impose liability on Express Scripts only as AST's principal. HRBFA seeks damages and fees, essentially arguing that because it "requested and received assurances and promises from AST that the stock certificate was good, valid, and free and clear of any stop and/or restriction, and therefore, was transferable," and because it was "required to repurchase shares of Express Scripts . . . in the form of an unsecured debit balance," AST and/or Express Scripts should be held liable for its potential losses. (Doc. 3 at 2.)

On October 31, AST filed a third-party complaint against Schwartze (Doc. 15), as well as a Counterclaim against HRBFA. (Doc. 13.) Against HRBFA, AST pursues claims of statutory conversion, common law conversion, common law fraud/misrepresentation, negligence, recovery of payment by mistake, unjust enrichment, and civil conspiracy. AST's factual allegations are that HRBFA failed to investigate whether Schwartze actually owned the 150,000 shares of Express Scripts stock, should have known that she did not actually owned the shares, and failed to convey important information to AST that would have raised questions about Schwartze's actual ownership of the shares.

AST filed a motion to force HRBFA to turn over the 150,000 shares of Express Scripts stock and HRBFA filed a motion to dismiss and a motion for sanctions. On April 6, 2006, this Court granted HRBFA's Motion to Dismiss AST's Counterclaim, denied HRBFA's Motion for Sanctions, and granted in part AST's Motion for Turnover of Express Scripts stock. The Court ordered AST to post bond in an escrow account in the amount of its potential liability to HRBFA, approximately $3 million. The Court provided that this order was "without prejudice" to AST's right to seek recoupment of the bond if it was not liable. (Doc. 51 at 15.)[2]

Both AST and HRBFA filed motions for reconsideration. AST argued that the Court misinterpreted and misapplied Mich. Comp. Laws § 440.8115, Article 8 of the Uniform Commercial Code. HRBFA made several arguments. First, that there was no legal basis for the Court to order the turnover of the Express Scripts stock, since the stock belongs to Schwartze, and not HRBFA. Second, that turnover of the stock would put it in violation of New York Stock Exchange rules. Third, that HRBFA had a right to retain sufficient funds to protect its margin debit in Schwartze's account. Finally, as an "alternative interim remedy," HRBFA suggested that the Court could order Schwartze to turn over the assets in her Solomon Smith Barney Account, as well as the assets in her HRBFA account less the funds needed to secure the margin debit balance. (Doc. 55 at 6-15.)

Subsequent to the parties' motions, AST informed the Court of a change in circumstances:

---

[2]As AST and HRBFA have both recognized, the Opinion contains a typographical error. The Court stated, "AST may post bond in an escrow account without prejudice to seek recoupment if HRBFA is found not liable." (Doc. 51 at 15.) The Opinions should read, ". . . if *AST* is found not liable."

5

> AST and . . . Schwartze recently have reached an agreement that includes Schwartze transferring to HRBFA the $1,500,000 (plus interest) that currently is held in her Solomon Smith Barney account. Schwartze also has agreed to specifically request and facilitate the transfer to Express Scripts of the 150,000 shares of Express Scripts stock currently held in her HRBFA account (which are the subject of the Court's April 6 Order). Pursuant to the Court's April 6 Order requiring adequate collateral for the transfer of the shares, AST is prepared to deposit into the HRBFA account $1,245,034.81 in order to facilitate Schwartze's transfer of the 150,000 shares to Express Scripts. The transfer of the $1,500,000 from Solomon Smith Barney plus the $1,245,034.81 from AST will supply the account sufficient funds so that the transfer of the shares to Express Scripts will not violate applicable margin requirements.
>
> Additionally, AST and HRBFA have entered into a letter agreement for the facilitation of the transfer of the shares to Express Scripts. The agreement provides that the $1,245,034.81 deposited by AST into the Schwartze HRBFA account (a) is without prejudice to AST receiving some or all the funds back pursuant to an agreement of the parties or order of the Court, and (b) that the funds will remaining pending in the account until either a court order or a written agreement or the parties directs the disposition of the funds. The agreement further provides that HRBFA will turnover the shares to AST on behalf of Express Scripts upon the deposit of the funds.

(Doc. 58 at 1-2.) Thus, the parties' agreements resolved several of the issues raised in HRBFA's Motion for Reconsideration.

On May 15, 2006, this Court held a scheduling conference.[3] The Court inquired with HRBFA if all of the issues raised in its Motion for Reconsideration had been rendered moot by the agreement of the parties. HRBFA stated that there were outstanding issues in its Motion for Reconsideration that required the Court's attention. The Court indicated to the parties that it would consider the outstanding issues raised in HRBFA's Motion upon further argument.

---

[3]There is no transcript from the scheduling conference.

On the same day, the Court issued a written order in which it denied AST's Motion for Reconsideration and granted in part HRBFA's Motion for Reconsideration. Recognizing that HRBFA's Motion had been partially resolved by the intervening agreement of the parties, the Court stated that it would "reconsider the outstanding issues raised in HRBFA's Motion for Reconsideration upon full briefing and argument," and directed HRBFA to file a Motion for Summary Judgment regarding "any outstanding issues." (Doc. 59 at 2.)

Accordingly, HRBFA has filed a Motion for Summary Judgment. HRBFA argues that "pursuant to Schwartze's Account Agreement" with HRBFA, AST has no claim or entitlement to the funds in Schwartze's HRBFA account. HRBFA goes on to argue that it is entitled to summary judgment on the merits of its claims against AST for negligence and breach of warranty.

AST has filed a Motion to Strike HRBFA's Motion for Summary Judgment, pointing out that the merits of HRBFA's claims were not raised in its Motion for Reconsideration or contemplated by the Court or the parties. AST contends that it would be inappropriate to rule on the merits of this case prior to meaningful discovery and contrary to the Court's May 15 Order.

In litigating these Motions, a number of exhibits have surfaced which shed light on the transaction at issue. Most important among them is an affidavit from Catherine Schwartze, who, it turns out, is a 78-year-old unmarried retiree with some investments but a modest

7

income.[4]  Schwartze's affidavit describes her dealings with her stockbroker at HRBFA, Gordon Rennard:

> Some time after June 22, 2005, I received the attached letter and certificate from Express Scripts, Inc.  I though the certificate was sent to me by mistake since I did not at that time own any Express Script[s] shares and had no idea how I would have gotten 150,000 shares of that stock.
>
> On or around June 29, 2005, Mr. Rennard came to my townhouse.  I showed Mr. Rennard the . . . letter and certificate and told him that I though[t] the certificate could not be mine and must be a mistake.  Mr. Rennard took the certificate with him and said he would check into it.
>
> Mr. Rennard called me and told me the certificate was valid.  He said that he had checked with the transfer agent and that the certificate belonged to me.  I told Mr. Rennard I did not believe the certificate belonged to me and did not know why I received it.  Mr. Rennard reassured me that his firm had investigated it, the transfer company confirmed it, and that the certificate belonged to me and perhaps someone had anonymously gifted it to me.  Mr. Rennard recommended selling all 150,000 shares and purchasing income producing investments.  I still was not sure that the stock belonged to me and stated that.
>
> I was uneasy with Mr. Rennard's sale of the 150,000 shares and his purchase of various bonds.  At the suggestion of my nephew, I transferred $1.5 million out of my [HRBFA] accounts into a Smith Barney account to have some of this money under the care of a different financial advisor.

(Doc. 70 Ex. 1.)[5]

---

[4]Schwartze states that aside from the events described here, her financial net worth is approximately $500,000 and that she relies on social security payments and income from investments for an annual income of about $30,000.  (Def.'s Br. Ex. 1.)

[5]Rennard has also submitted an affidavit.  He concedes that Schwartze told him that she did not know why she received the stock certificate, but contends that the idea of an anonymous gift originated with Schwartze, rather than himself: "Ms. Schwartze informed me that she had dated wealthy men in the past and that perhaps the Express Scripts stock had been bought for her or given to her by one of those persons."  (Doc. 75 Ex. 2.)

## II. Standard of Review

While HRBFA has brought a Motion for Summary Judgment, the discussion below revisits its Motion to Dismiss AST's Counterclaim. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiffs, the court must assume that Plaintiffs' factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996). This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted) (emphasis in original).

## III. Discussion

For purposes of its present Motion, HRBFA's primary argument is that summary judgment is now appropriate for the same reasons underlying the Court's dismissal of AST's Counterclaim. A corollary to this argument, however, is that if AST's claims had survived HRBFA's earlier Motion, the present Motion would fail as well. Although the parties have not raised the issue, recent factual development compels the Court to revisit its earlier ruling dismissing AST's Counterclaim.

Since the Court was first faced with HRBFA's Motion to Dismiss Counterclaim, and AST's Motion for Reconsideration as to the Court's Order on the issue, the underlying facts

to this case have changed in a small but important respect. As noted above, AST's Counterclaim rests on allegations that HRBFA "failed to investigate whether Schwartze actually owned any shares . . . of Express Scripts stock," and that the "highly unusual and suspicious" facts surrounding the transaction gave HRBFA "no basis to believe that Schwartze had any right to and/or an ownership interest in the stock certificate." (Doc. 13 at 12-13.) Essentially, AST argued that HRBFA "turned a willfully blind eye to the patently suspicious circumstances surrounding the presentation of the certificate . . . ." (Doc. 33 at 12.)

In its Order granting HRBFA's Motion to Dismiss, this Court relied on Article 8 of the Uniform Commercial Code, which has been adopted in Michigan. The key portion, the Court found, is Section 115, which provides in part,

> A securities intermediary that has transferred a financial asset pursuant to an effective entitlement order, or a broker or other agent or bailee that has dealt with a financial asset at the direction of its customer or principal, is not liable to a person having an adverse claim to the financial asset, unless the securities intermediary, or broker or other agent or bailee did 1 or more of the following:
>
> . . .
>
> (b) Acted in collusion with the wrongdoer in violating the rights of the adverse claimant.
>
> (c) In the case of a security certificate that has been stolen, acted with notice of the adverse claim.

Mich. Comp. L. § 440.8115.

The Court found a "difficult issue" in whether AST had alleged sufficient facts to show that HRBFA had acted in collusion with Schwartze, and was therefore subject to exception (b) of Section 115. The Court relied heavily on Comment 5, which provides in part,

> It is not the role of the record-keeper to police whether the transactions recorded are appropriate, so mere awareness that a customer may be acting wrongfully does not itself constitute collusion. That, of course, does not insulate an intermediary or broker from responsibility in egregious cases where its action goes beyond the ordinary standards of the business of implementing and recording transactions, and reaches a level of affirmative misconduct in assisting the customer in the commission of a wrong.

Mich. Comp. L. § 440.8115 cmt. 5.

The Court found that AST's allegations and arguments did not satisfy these requirements:

> AST attempts to turn a negative into a positive. It argues that HRBFA's *failure to apprise* it of "red flags" constituted *affirmative* misrepresentation—that HRBFA contacted AST not to ensure the validity of the stock certificate, as the transcript would suggest, but rather as a slick means of lulling AST into complacency—"so that AST would not conduct its own investigation and uncover its own negligent error."

(Doc. 51 at 12.) Because HRBFA's alleged misconduct was merely passive, and because it was not HRBFA's job to "police" the appropriateness of the transaction, the Court held that AST had failed to allege facts sufficient to show HRBFA's "affirmative misconduct in assisting the customer in the commission of a wrong." Mich. Comp. L. § 440.8115 cmt. 5. The Court therefore granted HRBFA's Motion to Dismiss AST's Counterclaim.

The recent affidavit from Catherine Schwartze paints a much different picture than the allegations and arguments found in AST's Counterclaim and earlier briefs. Schwartze claims that she immediately told HRBFA that the Express Scripts stock certificate "could not be mine and must be a mistake." She states that HRBFA took the certificate anyway, and after speaking with AST, told her that she owned the certificate. She claims that even then, she insisted that she did not believe that the certificate could be hers, but to reassure her, HRBFA came up with the idea that perhaps somebody had anonymously gifted the

11

certificate the certificate to her. In short, Ms. Schwartze's affidavit describes HRBFA's dogged efforts to persuade her to sell her 150,000 shares of Express Scripts stock, despite her numerous objections that she was not the rightful owner. (Doc. 70 Ex. 1.)

Schwartze's affidavit changes the landscape of this case quite dramatically. Rather than a passive intermediary, HRBFA now appears to have been an active wrongdoer, pressuring a 78-year-old woman to sell stock that she insisted did not belong to her. This goes far beyond a failure to police misconduct; it is the knowing encouragement and facilitation of misconduct. In fact, according to Schwartze, HRBFA may have been the ringleader in this scheme. Moreover, HRBFA's contention that its knowledge of wrongdoing was at most only "constructive knowledge," rather than "actual knowledge," must fail. (*See* Doc. 22 at 10.) Perhaps the facts as originally alleged only supported a theory of constructive knowledge, but they now support something much more serious: HRBFA not only failed to investigate "highly unusual and suspicious" circumstances, it blatantly ignored and suppressed *conclusive proof* that Schwartze did not own the Express Scripts stock at issue.

Presumably, these facts have taken even AST by surprise—otherwise, it likely would have alleged conduct along the lines of what Ms. Schwartze has described. The Court will grant AST leave to amend its Counterclaim in light of the facts thus far developed in this litigation.

The conduct described in Ms. Schwartze's affidavit is far more serious than that described in AST's Counterclaim. It is not protected by Section 115 of Article 8 of the U.C.C., which provided HRBFA's primary argument for dismissal and the basis of the

12

Court's April 6 Order. Not only do these facts preclude summary judgment on behalf of HRBFA, they suggest the possibility that HRBFA may be liable for damages to AST.

## IV. Conclusion

The above discussion renders it unnecessary to rule on the present Motions. Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby DENIES HRBFA's Motion for Summary Judgment without prejudice. The Court further DENIES AST's Motion to Strike as moot.

                    s/Nancy G. Edmunds
                    Nancy G. Edmunds
                    United States District Judge

Dated: July 27, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 27, 2006, by electronic and/or ordinary mail.

                    s/Carol A. Hemeyer
                    Case Manager